# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMAL LATAZ KING, #350268,

        Petitioner,

v.                            Case No. 2:06-CV-12484
                                 HONORABLE STEPHEN J. MURPHY, III

JAN E. TROMBLEY,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner, Jamal Lataz King, is a state inmate currently incarcerated at Lakeland Correctional Facility in Coldwater, Michigan. Petitioner was convicted after a jury trial in Wayne County Circuit Court of second-degree murder, Mich. Comp. Laws § 750.317; and carrying or possessing a firearm during the commission or attempted commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to thirty to sixty-five years for the second-degree murder conviction and two years' imprisonment for the possession of a firearm conviction.

Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, the Court will deny the petition.

## I. BACKGROUND

The state appellate court in this case set forth underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd* . 41 Fed. App'x. 730 (6th Cir. 2002), as follows in pertinent part:

Defendant was charged with crimes arising out of the July 19, 2003 shooting death of Jermaine Frazier. On the afternoon of the shooting, Frazier went to Roland Robertson's house to borrow a drill bit. Robertson said that Frazier told him about something and that he responded by telling Frazier that, "he better be careful." Robertson testified that he heard a commotion as he came back outside and saw defendant chasing Frazier with a handgun. Robertson saw defendant shoot Frazier in the back as Frazier ran towards his walkway. Frazier bounced off a fence and ran towards the middle of the street. Robertson testified that he yelled to defendant, "Hey, don't do that; Don't do it. Ain't worth it." Defendant looked back at Robertson and then shot Frazier in the back again. Frazier then fell in the street. Robertson testified that he again told defendant, "It ain't worth it, just ain't worth it. Don't do it," and defendant again looked back, but proceeded to shoot Frazier as he lay in the street. Robertson then watched defendant get into the passenger side of a waiting car and leave.

Diane Gidney, an acquaintance of Robertson's mother, was leaving Robertson's house at the time of the shooting and saw defendant chase Frazier and shoot him in the back just before he ran into the fence. She also heard Robertson telling defendant not to shoot Frazier, but watched as defendant ran after Frazier and continued to shoot him until he fell in the street.

In addition, Xalivianna Smith testified that she was speaking with Frazier just minutes before the shooting about an incident that had occurred the night before. After Frazier left her house, she stated that she heard gunshots and saw defendant running down the street. She testified that she saw defendant standing over Frazier holding a gun and then saw him get into a car and leave. When she went to assist Frazier, he said to her, "You told me, you told me, you told me." Smith testified that she knew what Frazier meant by that. She also said that Frazier told her that "Pops" shot him and that she knew defendant as "Pops." At trial, defendant denied that he was the person who shot Frazier and presented several alibi witnesses in his defense.

*People v. King*, No: 253270, *1 (Mich Ct. App, March 8, 2005).

Following Petitioner's conviction, he filed a direct appeal with the Michigan Court of

Appeals raising the following claims:

I. Where the evidence of first-degree murder was insufficient, defendant-appellant is entitled to a new trial because the jury was allowed to consider the charge in violation of due process, which substantially decreased his chances of acquittal and resulted in a compromised verdict.

2

II.  Defendant-appellant's conviction for second-degree murder should be reversed because the evidence was insufficient.

III.  If this court determines that trial counsel's failure to move for a directed verdict precludes relief on issue 1, counsel violated defendant-appellant's constitutional right to the effective assistance of counsel.

IV.  The prosecution's numerous improper arguments denied defendant-appellant a fair and impartial trial.  If trial counsel waived the error by failing to object, he deprived defendant-appellant of effective assistance of counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v King*, No. 253270, 2005 WL 544239  (Mich. Ct. App. March 8, 2005).   Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same four issues presented before the Michigan Court of Appeals. The Michigan Supreme Court denied relief "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. King*, 474 Mich. 857; 702 NW2d 582 (2005) (table).

Petitioner then filed the present petition pursuant to 28 U.S.C. § 2254, raising the following claims:

I.  Conviction obtained because jury was allowed to consider 1st degree murder charge.

II.  Conviction for 2nd degree murder was a compromise verdict not one based on sufficient evidence.

III.  Counsel failed to move for a directed verdict on issue one abrogated Petitioner's constitutional right to the effective assistance of counsel.

IV.  Ineffective assistance of counsel for failure to object to improper prosecutorial arguments which denied Petitioner a fair and impartial trial.

## II.  STANDARD

Petitioner is not entitled to the writ of habeas corpus unless the state court's adjudication of his claims on the merits–

3

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## III.  DISCUSSION

### A.  Sufficiency of Evidence

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). As the Supreme Court explained:

This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

4

essential elements of the crime beyond a reasonable doubt.

*Id.*, 443 U.S. at 318-19. (internal citation and footnotes omitted).

This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. "Normally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F. Supp. 2d 657, 681 (E.D. Mich. 2006). However, "[t]he habeas court does not substitute its own judgment for that of the finder of fact." *Alder v. Burt,* 240 F. Supp. 2d 651, 661-62 (E.D. Mich. 2003). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002) (internal quotations omitted). In a federal habeas proceeding, the scope of review of the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

### 1. First-Degree Murder

Petitioner first contends that the charge of first-degree premeditated murder should not have been submitted to the jury because there was insufficient evidence of premeditation. The Michigan Court of Appeals disagreed and stated as follows:

> In this case, the evidence clearly supported submitting the first-degree murder charge to the jury. In order to successfully kill Frazier, defendant had to chase Frazier down and shoot him three times. All the while, defendant could have simply let him go, but instead he deliberately continued to chase

> him down.  Furthermore, defendant was twice told to stop, and twice he
> looked back only to return to the chase and shoot Frazier.  Each time
> defendant looked back, he had to weigh his actions, and each time he
> deliberately decided to continue the chase and fire upon Frazier.  From this
> evidence alone, a reasonable jury could infer that defendant premeditatedly
> and deliberately killed Frazier.  See *People v. Tilley,* 405 Mich 38, 45; 273
> NW2d 471 (1979) (holding that a lapse of time between shots as defendant
> pursued the victim was sufficient to establish premeditation).  Therefore, the
> first-degree murder charge was properly submitted to the jury.

*King*, 2005 WL 544239, *2.

Under 28 U.S.C.  § 2254(d)(1), the question here is whether the Michigan Court of

Appeals's application of the *Jackson* standard was reasonable. See *Gomez v. Acevedo*,

106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v.*

*DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass

1998).  While a challenge to the sufficiency of the evidence on an established element of

an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding,

see *Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has

always been dependent on how a State defines the offense that is charged in any given

case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); see also, *Jackson*, 443 U.S.

at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must

look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186

F.3d 91, 97 (2d Cir. 1999).

> To prove first-degree murder, the prosecution must establish that the
> defendant intentionally killed the victim and that the act of killing was
> premeditated and deliberate. *People v. Anderson,* 209 Mich. App. 527, 537;
> 531 NW2d 780 (1995).

*King*, 2005 WL 544239, *2, see also, Mich. Comp. Laws § 750.316(1)(a), (b).

Under Michigan law, "[p]remeditation is measured in time; time to permit a

6

reasonable person to subject the nature of his response to a second look." *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Anderson*, 209 Mich. App. 527, 537; 531 N.W.2d 780, 786 (1995). Relevant factors include the relationship of the parties, the defendant's actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. See *Id.*; *Brown*, 137 Mich. App. at 407. Further, because first-degree murder requires premeditation and deliberation rather than simply malice aforethought (as is required for second-degree murder), the actor must have the specific intent to kill in order to be convicted of first-degree murder. See *People v. Hart*, 437 Mich. 898, 898; 465 N.W.2d 328 (1991); *People v. Dykhouse*, 418 Mich. 488, 495; 345 N.W.2d 150 (1984); *People v. Aaron*, 409 Mich. 672, 715 n.102, 299 N.W.2d 304 (1980).

As with premeditation, "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1 (1985)).

In this case, Roland Robertson testified that: (1)  he witnessed Petitioner shooting the victim, Jermaine Frazier, as Frazier was running away from Petitioner; (2) he witnessed Petitioner shoot Frazier again in the back which caused him to fall; (3) he witnessed Petitioner stand over Frazier as he was lying on the ground and shoot him a third time; (4) before the second and third shots, Robertson called out to Petitioner not to shoot Frazier

and how it was not worth it, however although Petitioner acknowledged Robertson's pleas to stop, Petitioner shot Frazier a second and third time.  (Trial Tr., 11/11/03, pp. 60-64, 131).

Diane Gidney testified that she heard gun shots and saw Petitioner shooting at Frazier as he was running away.  (Trial Tr., 11/11/03, pp. 167-68).  Xalivianna Minnie Smith testified that: (1)  she saw Petitioner standing over Frazier with a gun and that she heard shots; and (2) before he died Frazier told her that Petitioner shot him.  (Trial Tr., 11/12/03, pp. 13, 31, 36-37).

Petitioner presented an alibi defense and called eight witnesses to establish his theory of the case.  The jury, however, did not find these witnesses credible.  To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded  certain pieces of evidence, he is not entitled to relief. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003).

"The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.*  A rational jury could well choose to credit Roland Robertson, Diane Gidney, and Xalivianna Minnie Smith 's testimony and to discount or reject outright Petitioner's alibi theory of the case.  The court on habeas review must in such cases defer to the jury's finding, made beyond a reasonable doubt, that the more credible witnesses supported the prosecution's charges. See *Matthews,* 319 F.3d at 788-89.  Given the testimony adduced

8

at trial, the Court finds that the Michigan Court of Appeals' decision to reject Petitioner's insufficiency of evidence argument relative to the first-degree murder charge  was not an unreasonable application of law.  The actions of Petitioner as attested to by Robertson, Gidney and Smith substantiates record evidence which reasonably supports a finding of guilt beyond a reasonable doubt of first-degree murder.  See *Jackson,*  443 U.S. at 318.

Petitioner's claim that his conviction was not supported by constitutionally sufficient evidence is without merit and habeas relief is not warranted.

### 2.  Second-Degree Murder

Petitioner "also argues that the prosecution failed to present sufficient evidence to support his conviction of second-degree murder." *King*, 2005 WL 544239, *2.  Again, the Michigan Court of Appeals rejected Petitioner's argument and stated as follows:

> In this case, three people saw defendant chase a defenseless Frazier, shoot him in the back twice, then stand over him and shoot him again.  This evidence was clearly sufficient to support he jury's finding that defendant killed Frazier with malice and without justification.

*Id.*

As with the Court's analysis of what constitutes first-degree murder, it is necessary to examine the elements of second-degree murder under Michigan law.  The common law crime of murder is defined as second-degree murder.  See Mich. Comp. Laws §750.317. To establish second-degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great

9

bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488 495; 345 N.W.2d 150 (1984); *People v. Aaron*, 409 Mich. 672, 713-14; 299 N.W.2d 304 (1980).

For the same reasons set forth above, the testimony of Roland Robertson, Diane Gidney, and Xalivianna Minnie Smith provide sufficient evidence for a jury to find that Petitioner acted with malice aforethought when he shot Frazier multiple times.

## B. Ineffective Assistance of Counsel

### 1. Sufficiency of Evidence

> Defendant also contends that his trial counsel was constitutionally ineffective for failing to move for a directed verdict on the grounds of sufficiency of the evidence.

*King*, 2005 WL 544239, *3.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to

10

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim:

> Because we have determined that these charges were properly submitted to the jury, such a motion would have been futile.  Defense counsel is not required to bring a futile motion for directed verdict.

*Id.*  The Court agrees.  It is likewise found by this Court that the prosecution presented sufficient evidence to submit to the jury relative to the first-degree murder offense; and that there was sufficient evidence presented to sustain Petitioner's conviction of second-degree murder.  Defense counsel's decision to forego filing a motion for directed verdict based upon a claim of insufficient evidence does not constitute deficient performance or prejudice Petitioner's defense.  Accordingly, Petitioner's ineffective assistance of counsel claim is without merit and does not warrant habeas relief.

## 2.  Prosecutorial Misconduct

11

Petitioner claims that his attorney failed to object to the prosecutor's misconduct during trial, and as a result, he provided ineffective assistance of counsel.  He alleges that the prosecutor: (1) improperly referenced voir dire discussions; (2) denigrated defense counsel; (3) attempted to appeal to the sympathy of the jurors; and (4) caused a prejudicial and cumulative effect as a result of his misconduct. Because there were no objections made at trial relative to the prosecutor's alleged misconduct, the Michigan Court of Appeals deemed the claims unpreserved and reviewed the issues under a plain error analysis. *King*, 2005 WL 544239, *3.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452.  Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before

12

a jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-550 (6th Cir. 1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

### a.  Procedural Default

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006), *cert. denied*, 549 U.S.1047 (2006); see also *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In denying

relief on this claim, the court relied upon Petitioner's failure to object to the prosecutor's alleged multiple acts of misconduct. *Id.* The failure to make a contemporaneous objection is a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. See *People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. See *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

The Michigan Court of Appeals denied this claim based upon a procedural default – the failure to properly object at trial. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). This Court may not review Petitioner's claims unless he has established cause

14

for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Given that the cause and prejudice inquiry merges with an analysis of the merits of Petitioner's defaulted claim, however, the Court concludes that it would be most efficient to simply consider the merits of the claim.

### b. Improper Reference to Voir Dire Discussions

Petitioner asserts that the prosecutor erroneously argued facts to the jury that were not admitted into evidence.  First, during closing argument, the prosecutor reminded the jurors about a premeditation, deliberation discussion which took place during voir dire:

> Now let's talk about the next two elements, premeditation and deliberation. We talked about this a little bit during jury selection.
>
> You are going to hear Judge Waterstone give you the instructions which is the law, but you know that premeditation and deliberation simply means thinking about your actions beforehand, weighing the pros and cons of your actions and thinking twice about what you're doing.  Big word for actions that we do everyday and we talked about things we do everyday that involve premeditation and deliberation such as stopping at a traffic light.

(Trial Tr. 11/13/03, pg. 102).  The Michigan Court of Appeals stated that "[b]ecause a prosecutor may make arguments based on the jury's common experience, this comment was not an impermissible argument based on the facts not in evidence."  *King*, 2005 WL 544239, *3.

Petitioner "also finds fault with the prosecutor's remarks concerning Gidney's credibility."  *King*, 2005 WL 544239, *4.  The prosecutor stated as follows:

> Ms. Gidney at the preliminary examination, ladies and gentlemen, did not misidentify the defendant which would have been significant in this case if

15

she had pointed to somebody other than the defendant out in the audience. She told us that she didn't want to look at the table where the defendant was seated but she did see him but she was afraid to identify him.

When she came here in Court today, or this week, she had enough courage to actually identify the defendant and did identify the defendant and, you know, there is no surprise that people see their assailants, see perpetrators of crimes and, because of fear, do not identify these people. Some folks, as we know now, even blow lineups. If you will, because they're afraid for their own lives and afraid for their families and that's just reason and common sense, ladies and gentlemen, but it doesn't negate the fact that a person has seen the things that they have seen.

We know by now there are some of us who have been victims of serious crimes, whether we were specifically targeted by the perpetrator or we worked at a certain business and our business was robbed, things of that sort, and we know that those events are traumatic and they are etched in our minds forever and those of us who were looking at the perpetrators whose eyes weren't closed and hiding under desks or beds, we know how those people look and it doesn't matter if the perpetrators of those crimes brought in fifty hundred witnesses to say that they weren't there, we know what we saw. We're not the liars. They are.

(Trial Tr. 11/13/03, pp. 110-11).   The Michigan Court of Appeals stated that:

Although the reference to the lineup could be construed as an argument based on facts not in evidence, when viewed in context, the prosecutor's remarks are more properly understood to be an argument based upon the jury's common sense, and practical experiences. Hence, this reference was not improperly made. Furthermore, the trial court properly instructed the jury that the trial attorneys' arguments were not evidence and that the jury may only make its decision based upon evidence actually admitted and their common experiences. Therefore, there was no error affecting defendant's substantial rights.

*King*, 2005 WL 544239, *4.

The Court agrees with the appellate court's assessment relative to each of the prosecutor's voir dire related remarks.   A prosecutor can make statements to the jury during closing argument in an effort to appeal to the jurors' common sense.   *Puertas v. Overton,* 342 F. Supp. 2d 649, 666 (E.D. Mich. 2004).

16

Although the prosecutor initiated the argument about premeditation, deliberation and line-up identifications, the Court finds that she asked the jury to use its common sense and to draw on their personal experiences as it relates to those concepts in an effort to help them understand how to apply those principles to this case.

> It is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence.

*U.S. v. Durham*, 211 F.3d 437, 441 (7th Cir. 2000) (internal quotation omitted). Thus, the prosecutor was permitted to urge the jury to use its common sense in evaluating the testimony offered at trial. *See United States v.Catano*, 65 F.3d 219, 228 (1st Cir. 1995); *United States ex rel. Hamilton v. Ellingsworth*, 629 F. Supp. 356, 366 (D. Del. 1988). Accordingly, the Court concludes that the prosecutor did not act improperly during the above referenced portion of her closing argument; and defense counsel's failure to object to the argument was not ineffective assistance.

### c. Denigration of Defense Counsel

In assessing whether prosecutorial misconduct renders a trial fundamentally unfair, courts are to consider the pervasiveness of any misconduct, its egregiousness, its deliberateness, and its weight in light of the evidence of guilt. *Paprocki v. Foltz*, 869 F.2d 281, 288 (6th Cir. 1987). A prosecutor may conduct himself or herself in a manner that "deserves condemnation," but still is not egregious enough to deprive the defendant of a fair trial. *Darden v. Wainwright*, 477 U.S. 168, 179 (1986). The statements made by the prosecutor during her rebuttal closing argument at issue are as follows:

There are some of us who have either gotten in trouble in our lifetimes or

17

have people who are near and dear to us who have gotten in trouble in our lifetime but we have had enough integrity to admit it, to call a spade a spade, to say that this person did wrong.  This person went through the processes that were involved for doing wrong and this person is on the road to correct behavior.

We have enough integrity to not parade several people to say, no, enough though I knew he did wrong, we are going to have people come in here and say he wasn't there.  That is not integrity.

(Trial Tr. 11/13/03, pp. 137-38).  Petitioner argues that the prosecutor's statements "went beyond the bounds of propriety" and that "the statements in this case drew the jury's attention away from the evidence and shifted it to the character and integrity of defense counsel."  (Pet. at 27-28.).  Because Petitioner's trial counsel did not object to these statements, the Michigan Court of Appeals reviewed them for plain error and concluded that the comments were not improper, stating as follows:

Although defendant correctly notes that a prosecutor may not suggest that defendant's trial counsel is intentionally attempting to mislead the jury, prosecutors are accorded great latitude regarding their arguments and conduct.  For this reason, this Court will "not review the prosecutor's remarks in [ ] a vacuum; the remarks must be read in context."  The scope of the review is important, "because an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument."  Taken in context, the prosecutor's remark was a commentary on the incredibility of defendant's alibi defense and defendant's own credibility.  A prosecutor may properly argue that witnesses, including the defendant are not worthy of belief.  Therefore, there was no plain error. Even if we were to hold that this comment was plain error, it is unlikely that this one isolated comment affected the outcome of the trial given the highly credible testimony of three eyewitnesses who each corroborated the others' description of the murder and directly identified defendant as the killer. Consequently, a new trial is not warranted.

*King*, 2005 WL 544239, *4.

The Court agrees.  A review of the challenged statements which were made during the prosecutor's rebuttal closing argument does not reveal such severe, pervasive, and

18

inflammatory denigrating comments so as to render Petitioner's trial fundamentally unfair. Prosecutors are ordinarily "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel," as well as to the defense's trial strategy. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000). The Court does not find that the prosecutor's remarks were inappropriate or exceeded the bounds of fair advocacy. In addition, the jury was instructed that the attorney's statements and arguments were not evidence. (Trial Tr. 11/14/03, pp. 4, 6). The prosecutor's closing rebuttal argument, therefore, did not abridge the Petitioner's right to a fair trial. Defense counsel's choice in not objecting to the prosecutor's rebuttal argument did not demonstrate deficient representation.

### d.  Attempting to Appeal to the Sympathy of the Jurors

Petitioner next argues that the prosecution engaged in misconduct by seeking sympathy from the jury for Frazier by stating in his closing argument:

> We know that the defendant caused the death of Jermaine Frazier because you have heard the testimony of the witnesses here in Court this week. You heard the testimony of Mr. Robertson, you heard the testimony of Diane Gidney and Minnie Smith.
>
> And you know, ladies and gentlemen, that Mr. Robertson testified that he saw this defendant, Jamal King, also known as Pops, on Pierson Street, a street that he is well familiar with, gun down Jermaine Frazier like he was an animal.

(Trial Tr. 11/13/03, pg. 100). The Michigan Court of Appeals rejected Petitioner's argument:

> When read in context, the prosecution's statement, in light of the testimony by Robertson that he saw defendant chase down Frazier and shoot him three times in the back, once while Frazier lay prone in the street, was a fair characterization of the events. Therefore, there was no error.

*King,* 2005 WL 544239, *5

The Court agrees.  While a prosecutor cannot take actions which are "calculated to incite the passions and prejudices of the jurors," *United States v. Solivan,* 937 F.2d 1146, 1151 (6th Cir. 1991), a prosecutor may argue from the facts that a witness is (or is not) worthy of belief, see *Portuondo v. Agard,* 529 U.S. 61, 69 (2000), and may argue inferences from the evidence.  See  *Byrd v. Collins,* 209 F.3d at 535.  Although the prosecutor's argument could have reflected some sympathy for Frazier, the argument was derived from the testimony of Robertson, Gidney, and Smith and was meant to explain that Petitioner committed the crime, and the gravity of the crime.  Even if the argument could be seen as improper, it was not so flagrant  as to deny Petitioner a fair trial.  Moreover, Petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision.  (Trial Tr. 11/14/03, pg. 4); See *Welch v. Burke,* 49 F.Supp.2d 992, 1006 (E.D. Mich. 1999).   For these reasons, habeas relief is denied on the substantive claim; and therefore, defense counsel did not act improperly by not objecting to the prosecutor's statements.

### e.  Cumulative Effect of the Prosecutor's Arguments and Resulting Misconduct

Petitioner claims he is entitled to habeas relief because of the cumulative effect of the prosecutor's alleged misconduct and defense counsel 's repeated failure to place objections on the record regarding the prejudicial argument posed by the prosecutor. Because Petitioner's discrete substantive claims lack merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error.  See *Gillard v. Mitchell,* 445 F.3d 883, 898 (6th Cir. 2006).  The Sixth Circuit noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine*

20

*v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Petitioner is not entitled to habeas relief.

For these reasons, the Court does not find merit in Petitioner's ineffective assistance of counsel claim. Counsel cannot be deemed ineffective for failing to raise frivolous claims. *Norris v. Schotten,* 146 F.3d 314, 336 (6th Cir. 1998). The Court therefore finds that defense counsel's failure to lodge an objection to the prosecutor's various statements during closing and rebuttal arguments does not amount to a deficient performance.

Even if counsel's performance, in failing to object, were to be deemed deficient, the deficient performance did not prejudice the defense. As discussed, there was substantial evidence from which a jury could have determined Petitioner's guilt. Further, the trial court made clear that the attorneys' opening statements and closing arguments were not evidence. Thus, there is no reasonable probability that the result of the trial would have been different but for counsel's failure to object, and Petitioner's claim of ineffective assistance of counsel fails.

### C. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the Court has studied the case record and the relevant law, and concludes

21

that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that Petitioner does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the petition for a writ of habeas corpus [docket entry #1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED.**


                          s/Stephen J. Murphy, III
                          STEPHEN J. MURPHY, III
                          United States District Judge

Dated:  September 28, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or

counsel of record on September 28, 2009, by electronic and/or ordinary mail.

s/Alissa Greer_____
Case Manager